**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 11 CR 00580 |
| BRADLEY MATTSON, STEVEN PAUL, and NEELESH PATEL, | ) Judge Ronald A. Guzmán |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Steven Paul has pleaded guilty to one count of health care fraud pursuant to a plea agreement. The agreement requires the government, at the time of sentencing and upon its determination that defendant has provided full and truthful cooperation, to move the Court pursuant to USSG 5K1.1 to depart downward from the low end of the applicable guideline range, and recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end of the applicable Guideline range. Shortly before defendant was scheduled to appear in court to schedule his sentencing, codefendant, Neelesh Patel, entered into a Deferred Prosecution Agreement with the Government. Paul now seeks to discover and inspect evidence in preparation for sentencing, in part, to investigate the relative disparities between his treatment and that of his codefendant Patel. Paul intends to address the relative culpability of defendants and the proportionality of the government's position and recommendations with regard to defendants' respective sentences. A denial of his discovery requests, Paul argues, would inhibit his ability to properly and comprehensively evaluate issues

related to relative culpability. Specifically, he requests discovery and inspection of all correspondence between any representative from Blue Cross Blue Shield of Illinois and any person associated with or employed by the Department of Justice including but not limited to the United States Attorney's office for the Northern District of Illinois and the Federal Bureau of Investigations.

The government contends that Paul' request is largely moot because it has already disclosed to him: (1) Paul's recorded statements made as part of his cooperation with the Government; (2) reports of interviews of several former employees of the clinics involved in the charged scheme (the "target clinics") and other witnesses; (3) documents recovered from, and reports related to, the searches of the target clinics; (4) undercover recordings by law enforcement at the target clinics and transcripts of those recordings; (5) Blue Cross's records of the billing data submitted by the target clinics for the period of the charged scheme; (6) Paul's tax information; (7) additional Blue Cross reports of interview and other *Jencks* material that it recently disclosed to codefendant Patel; (8) copies of e-mails from Blue Cross concerning the calculation of certain billing data and the basis of the restitution amount agreed to by codefendant Patel; and (9) select materials from agents' correspondence. Moreover, the government offered to make available for Paul's review the patient files in its possession and financial information concerning Paul that it had obtained during the investigation. The government has not, however, disclosed all of the agents' correspondence, or e-mails between government attorneys and their supervisors. Further, the government argues that it is not required to produce these materials because they are beyond the scope of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and/or are subject to the deliberative process privilege.

The government's obligation at this stage of the proceedings is to disclose any evidence to Paul that is favorable to him and material to his punishment. *United States v. Olofson*, 563 F.3d 652, 661-62 (7th Cir. 2009). The government's reasons for offering codefendant Patel a deferred prosecution agreement while continuing to prosecute Paul are neither. *In re United States,* 398 F.3d 615, 618 (7th Cir. 2005). Further, as Paul concedes in his reply brief, the deliberative process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004).

Nonetheless, Paul insists that any undisclosed correspondence between a government agent and a Blue Cross Blue Shield agent concerning matters related to sentencing, *e.g.*, communications related to the scope of the defrauded party's loss and restitution payments made by Paul and Patel to Blue Cross, is material. Paul does not, however, know whether such correspondence even exists, and if it does, what it contains. Rather, he asserts that it is "entirely conceivable, if not likely, that the government had written communication with, and exchanged information with, Blue Cross," and speculates as to the relevant information that these communications "could likely" contain. For example, Paul contends that such documents must exist because of the government's intense interest in his settlement negotiations with Blue Cross Blue Shield. But Paul was a part of those negotiations. So there is nothing he could possibly gain, other than information to which he is not entitled, *i.e.*, insight into the government's deferred prosecution decision, from knowing what the government asked Blue Cross Blue Shield about negotiations with Paul.

Defendant also seeks, but is not entitled to receive, the government's preliminary loss

computations. He is entitled only to the information the government used to make those calculations so he can challenge them and/or the government's final calculations when they are presented to the Court. The government confirms that it has provided Paul with this information, *i.e.*, copies of e-mail correspondence from Blue Cross concerning the calculation of certain billing data and the basis of the restitution amount agreed to by defendant Patel.

The Court finds no basis for concluding that the government has not met its *Brady* obligations. The government says it searched the files of the attorneys assigned to the investigation of this case for correspondence with Blue Cross that would constitute *Brady* material and found none. It also states that, in response to Paul's request for more information, it again reviewed the agents' materials and will disclose some additional correspondence it found. The government did not conduct a search of correspondence from supervising government attorneys. But it was not required to do so, as it is very likely that any such correspondence would reveal the government's deliberative process and very unlikely that it would contain *Brady* material. In short, the government represents that it has or will disclose any information relevant to the defendant's sentencing that it was not previously disclosed, and that is the only information to which Paul is entitled.

**SO ORDERED**     ENTER: July 14, 2014

*[signature]*
 **RONALD A. GUZMÁN**
 **District Judge**