# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 11-cr-580-2 |
| | ) | |
| STEVEN PAUL, | ) | Judge Ronald A. Guzmán |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Court sustains the government's objections to Defendant's First Requests for Production of Documents. To the extent that Defendant moves to reconsider the Court's October 13, 2015 order, that motion is denied.

## STATEMENT

Defendant's brief in support of his request for document production presents a series of interrelated issues regarding the validity of his conviction, such as: whether he was promised immunity for his cooperation with the government; whether he was deprived of effective assistance of counsel; and various, vague due-process concerns pertaining to the need for a full and complete record. In order to flesh out these issues, Defendant seeks to discover any documents or internal memoranda the government has pertaining to his (perceived) immunity offer and his former counsel's awareness of, but failure to communicate, an offer of deferred prosecution. The problem, though, is that the Court already determined Defendant was never offered immunity, leaving ineffective assistance of counsel regarding the purported offer of deferred prosecution as the only relevant issue for discovery purposes.

But things are never so simple. After the government challenged his discovery requests on the basis of relevance and privilege, Defense counsel expressed at oral argument that the immunity documents are still (somehow) relevant to whether Defendant's former attorney did or did not communicate the offer of deferred prosecution. The Court disagreed, but nonetheless gave Defendant an opportunity to explain his position in writing. Yet instead of clarifying the relevance issue, Defendant submitted a "reply brief" (styled as a motion for reconsideration) in which he grossly mischaracterizes the record and asks the Court to revisit its determination on immunity, thereby blurring the lines between the relevant issues, the applicable legal principles, and the timeline of events. The Court will therefore lend some clarity by way of background.

**I.   Background**

These issues first came to light prior to Defendant's sentencing, when, roughly three years after signing a plea agreement, he sought to withdraw his guilty plea on the basis that the government had promised him immunity in exchange for his cooperation as an informant. Apart from the eleventh-hour timing, one thing was curiously lacking: a formal agreement signed by the parties. Undeterred, Defendant proceeded on a theory of informal immunity and requested an evidentiary hearing to determine the existence thereof. But the Court denied that request because Defendant's own actions, and the evidence he submitted, foreclosed any notion that he was ever offered immunity.

(a)   *Defendant's Actions*

The primary hurdle Defendant faced was his acknowledgment that he would be criminally charged and that any cooperation he gave would be in exchange for a reduced sentence — not immunity. This happened on at least three occasions:

> *First Acknowledgement*: Prior to testifying before the grand jury, Defendant signed a plea letter expressly acknowledging (1) that he was guilty of healthcare

fraud and that he would be charged accordingly, (2) that he agreed to cooperate with the government, and (3) *that in exchange for his cooperation, the government would recommend a downward departure at sentencing*. (*See* Letter dated 8/31/2011, [Dkt # 216-1, Ex. B].)

*Second Acknowledgement*: In his plea agreement, which contained the same provisions as the plea letter, Defendant pleaded guilty to one count of healthcare fraud and acknowledged that his plea was "entirely voluntary and represent[ed] *the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 580*." (Plea Agreement [Dkt. # 70]) (emphasis added).

*Third Acknowledgement*: During the change of plea hearing, Defendant stated to the Court that he reviewed and understood all of the terms of the plea agreement, that the plea agreement represented the entire understanding that he had with the government, and that *no one had made any other promises or assurances to induce his guilty plea*. (Change of Plea Hr'g Tr. [Dkt. # 216-1] at 5-8.)

Simply put, Defendant repeatedly and explicitly disclaimed the existence of any other agreement between him and the government and voluntary pleaded guilty to criminal charges in exchange for a reduced sentence, which was fatal to his claim for immunity. *See United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992) (explaining that unambiguous plea agreements contemplate the entire agreement between the parties and should be enforced); *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) (explaining that a defendant is ordinarily bound by his statements to the court disclaiming the existence of additional promises).

(a) *Defendant's Evidence*

Undeterred by his repeated disclaimers, Defendant further sought to establish that the government offered him immunity by submitting affidavits from himself and his former lawyer detailing their understanding of what happened during plea negotiations, along with various draft documents which, in Defendant's view, showed that immunity was being negotiated instead of a plea. Not so.

Regarding the affidavits, the Court found that they were conclusory and vague. Examples include:

> *Defendant's Initial Affidavit*: "During 2009 and particularly from May-August 2009, I was told I was acting on the government's behalf based on an immunity agreement that Mr. Cook [William J. Cook] and the government agreed upon." [Dkt. # 210, Grp. Ex. 1 at 1-2.]
>
> *Defendant's Supplemental Affidavit*, in which defendant recalls a meeting between his attorney and the AUSA regarding a deferred prosecution agreement, where, after being handed a piece of paper by the AUSA, his attorney responded by saying, "This is not what we agreed to." (Def.'s Supp. Aff. [Dkt. # 222] Ex. A.) He further explains that about a week later, his attorney told him his "immunity was back on track." (*Id.*)

Such imprecise, one-sided recollections hardly establish an offer or promise on behalf of the government.

The documents Defendant submitted were no different. For example, Exhibit A to Defendant's opening motion is a single page entitled "10-16-2009 draft grand jury statements of Steven Paul," which states in relevant part "that the defendant is agreeing to cooperate with the government's investigation in exchange for ~~deferred prosecution~~/transactional immunity [which is written in long hand] for my role in the billing scheme. Per the terms of my agreement, (to be detailed once finalized)." (Dkt. # 210, Ex. A.) There are myriad *inferences* that might be drawn from this exhibit, but only one truth: this was not a finalized agreement.

Defendant also referred to a latter from his former attorney to the government, which presented a long narrative of *failed* back-and-forth negotiations between the parties. At best, the letter established that (1) the parties *discussed* the possibility of immunity but could not agree, and that (2) Defendant's attorney made a strategic choice to proceed in cooperating with the government despite the lack of a concrete offer of immunity (perhaps in the hopes that a fully

executed immunity agreement would eventually materialize). (*See* 10/13/15 Mem. Op. & Order [Dkt. # 227] at 7-11.) Unfortunately for Defendant, that never happened.

The list of Defendant's "evidence" of immunity goes on, but all of it was ultimately unpersuasive in the same manner. It consisted entirely of unsigned documents with handwritten notes, documents clearly labeled as drafts, documents that made no mention of immunity, and his lawyer's subjective understanding of what was being promised. This hardly presented a "factual dispute" worthy of an evidentiary hearing, especially when considered alongside Defendant's signed plea agreement, plea letter, and his statements at the change of plea hearing — all of which effectively denied any promise of immunity made by the government. Accordingly, an evidentiary hearing was not needed to conclude that Defendant was never offered immunity.

The validity of Defendant's conviction was not, however, entirely resolved. Although the Court rejected his immunity contentions, it nonetheless found that the record may support a claim for ineffective assistance of counsel. Particularly, the Court was concerned that if Defendant's attorney failed to discuss the meaning and implications of a deferred prosecution agreement (particularly when a definitive offer of immunity was not forthcoming from the government), then the result of Defendant's criminal proceeding may have been different. *See Lafler v. Cooper* 132 S. Ct. 1376, 1384 (2012) (explaining that in order to succeed on ineffective assistance of counsel claim, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings may have been different"). The Court accordingly gave Defendant an opportunity to develop this issue through discovery, and it is with this understanding that the Court now turns to the instant motion.

## ANALYSIS

I.  **Motion for Reconsideration**

While there is no Federal Rule of Criminal Procedure pertaining to motions for reconsideration, the Seventh Circuit has held that such motions should be treated identically to those in civil suits. *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). In that respect, Rule 54(d)[1] provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities [of the parties] . . . may be revised at any time before entry of [final judgment]." Fed. R. Civ. P. 54(d). However, it is well-established that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (citation omitted). Here, Defendant has neither presented new evidence nor a change in the law; thus, the Court's reconsideration is limited to whether it committed a manifest error of law. *See Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (explaining that a manifest error of law is "the wholesale disregard, misapplication, or failure to recognize controlling precedent") (citation omitted). No such error was committed here.

At the outset, it is necessary to note that Defendant's brief is devoid of clarity, thereby making it difficult to discern what aspects of the Court's decision are being challenged. For example, Defendant begins by stating that "the government's utter declination to forthrightly tell this Court the backdrop concerning defendant's immunity contentions reduces defendant's due process clause to nothing more than empty promises." (Def.'s Reply Br. [Dkt. # 238] at 7.) He then goes on to state that:

---

[1] Defendant has not cited any rule or case law governing motions for reconsideration, so it is unclear which rule or standard he believes to govern this motion. Nonetheless, the Court will construe his arguments under Rule 54(d), since that is the only rule that plausibly applies.

> The unchallenged partial record reveals that defendant continuously acted at the behest of the government. . . . These exhibits [(the same ones mentioned above)] support and corroborate defendant's position that there were multiple government immunity entreaties upon which defendant reasonably relied. . . . Furthermore, Defendant reasonably believes that his discovery importunings will reveal that he was not alone in his belief that he was protected from prosecution.

(*Id.*) Apart from blurring the lines between his discovery requests and the issues for reconsideration, this paragraph is not an argument. The significance of the "partial record" *is* challenged, and Defendant has simply concluded – but not explained – why the record supports his belief that he was offered immunity. His argument is therefore waived. *See Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012) (explaining that conclusory or underdeveloped arguments are waived).

Next, Defendant spends an entire page discussing an irrelevant case that he cited in an earlier brief, *U.S. v. Lyons*, 670 F.2d 77 (7th Cir. 1982). In that case, the Seventh Circuit rejected the defendant's claim of immunity and expressed that it gave great deference to the trial court's findings of fact on the issue, since they were derived from a plenary evidentiary hearing. *Id.* at 80. But what Defendant hopes to show by highlighting this holding is unclear. The only clue we have is the *single* declarative sentence that follows his recap of *Lyons*: "[t]hus, in stark contrast to the government's resonating position in the case at hand, the Lyons affirmation of immunity-rejection was based on the trial court's evaluation of the credibility of the witnesses, including the testimony of the government lawyers directly involved in the immunity-controversy." (Def.'s Reply Br. [Dkt. # 238] at 8.) To the extent that Defendant cites *Lyons* for the principle that an evidentiary hearing is necessary to determine the existence of immunity, he is mistaken. "A district court does not have to hold an evidentiary hearing just because a party asks for one. An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue." *United States v. Osborne*, 931 F.2d 1139, 1162-63 (7th Cir. 1991).

Defendant has never met this standard — not in his original motion and certainly not now. Nor has he highlighted any manifest errors of law in the Court's reasoning. Therefore, Defendant's motion for reconsideration is denied.

## II. Defendant's Discovery Requests

Despite repeated admonitions from the Court that the only remaining issue is ineffective assistance of counsel, Defendant submitted a litany of vague, overly-broad discovery requests to pertaining to immunity and other collateral issues, such as:

> Anything that reflects, evidences, or relates to the circumstances, expectations, understandings, or disputes regarding such circumstances, expectations, understandings, or disputes relating to Mr. Paul's relationship to the relevant governmental investigations
>
> [and]
>
> All documents evidencing, reflecting, or relating to any communication between the Prosecuting Parties and Mr. Paul and his attorneys which pertains to any, each, or all of the following:
>
>     a) A proffer agreement;
>     b) Use immunity;
>     c) Transactional immunity;
>     d) A deferred prosecution agreement;
>     e) Any mention, comment, insinuation, note, or remark regarding any type of deal, agreement, or offer that might be made, will be made, or has been made by any of the Prosecuting Parties to Mr. Paul or his attorneys. . . .
>
> [and]
>
> All documents related to the Prosecuting Parties' notes, thoughts, emails, or other written, typed, or spoken instruments leading up to, preparing for, regarding, and summarizing, the meeting with Mr. Paul and his attorneys on or about October 16, 2009.

(Def.'s First Req. Prod. Doc [Dkt. # 234] at 3-4.) The list goes on, but the Court need not analyze each request in detail because Defendant has failed to make a threshold showing of materiality, thereby undermining all of his requests for production.

Under Rule 16, a defendant may inspect documents within the governments control if they are "material to preparing the defense," Fed. R. Crim. P 16(a)(1)(E)(i), but *only* if he makes at least a *prima facie* showing of materiality. *United States v. Thompson,* 944 F.2d 1331, 1341 (7th Cir. 1991). To make a *prima facie* showing, a defendant cannot rely on general descriptions or conclusory arguments, but must convincingly explain how specific documents will significantly help him uncover evidence that pertains to his guilt or innocence. *United States v. Caputo*, 373 F. Supp. 2d 789, 793-94 (N.D. Ill. 2005); *see also United States v. Farah*, 475 F. App'x 1, 6 (4th Cir. 2007) (explaining that, in contrast to the "relevance" standard used in civil cases, "materiality" means more than "bear[ing] some abstract logical relationship" to the issues in the case; rather, "there must be some indication that the disclosure of the disputed evidence would have enabled the defendant to significantly alter the quantum of proof in his favor"). Defendant has had ample opportunity to offer a convincing argument in this regard, but he has yet to do so.

At the motion hearing, for example, defense counsel wavered back and forth between several unconvincing rationales. First, he suggested that the documents would somehow corroborate Defendant's former attorney's failure to communicate the possibility of deferred prosecution:

> MR. KING: Perhaps I haven't made myself clear. I'm not going to whether the government promised him something else and didn't deliver. You've ruled on that, and that's really not the focus of this. The focus of this is, is there -- are there things in the record, in the documents, that support the discovery -- the comments made by Mr. Cook [Defendant's former attorney] that he was given the DPA, it was rejected out of hand because it was inconsistent with the understanding that he believed he had with the government and that he and Mr. Paul had been acting on consistently. And if that --
>
> THE COURT: I guess I don't understand why you're looking to find some circumstantial evidence based upon internal government communications to verify Mr. Cook's response.

> MR. KING: I'm looking for corroboration so that it will be clear to this court and to any reviewing court if it ever got to that point that what Mr. Cook said is completely consistent, and it's corroborated by the relevant circumstances that surround that episode.

(11/24/15 Hr'g Tr. [Dkt # 237] at 5.) But the Court rejected this rationale because, even assuming the documents contain corroborative evidence (which is speculative), the government is not required to go on a fishing expedition for *possibly* circumstantial evidence, especially when Defendant already has the best sources of evidence available to him: the parties who were present – Defendant and Mr. Cook – and their testimony regarding what happened. This evidence is both readily available and would illuminate the entirety of the ineffective assistance of counsel issue. *See Caputo*, 373, F. Supp. 29 at 793-94 (explaining that even where a *prima facie* showing of materiality is made, courts need not compel discovery if the information is readily available from other sources or the defendant's own knowledge).

Defense counsel then switched gears and argued that the documents were needed to clarify the record on the immunity issue:

> MR. KING: I understand the Court's rulings. As you know, I don't agree with them, but I understand them. But the essence of the Court's ruling on the substantive, was there a relationship between the government such as it precluded prosecution, that the Court basically said in its orders, "I don't have a clean record in front of me that points to, you know, the kind of detail I want or the clarity that I need to get to a conclusion that is consistent with the position we've advocated."
> . . . .but I think that the record is overall clear that there was an expectation and a relationship between the government and Mr. Paul, that the government took advantage of that relationship and continually got effort and work from Mr. Paul in reliance on his understanding and expectation of how that relationship would ultimately conclude.

The Court's position on the record, however, was never that "it's not clean enough" to determine whether immunity was offered. Quite the opposite. As the Court has explained in painstaking

detail time and again, the record is clear and patently forecloses any notion that Defendant was offered immunity.

This is precisely where things were left at the motion hearing, when the Court gave Defendant one last chance to justify the materiality of his discovery requests in writing. But that has not happened. In his reply brief, Defendant frames his entire argument around materiality of the requested documents as they pertain to immunity. He then *assumes* the cogency of this argument, and spends seven pages addressing the government's contention that the requested documents are shielded from disclosure by the deliberative process privilege, again using immunity as a basis for circumventing that privilege. <u>But immunity is not the issue</u>. Rather, it is whether Defendant's former counsel failed to communicate the existence and significance of an offer of deferred prosecution. Nowhere in Defendant's brief does he address this issue. Instead, he offers various vague due process concerns and claims that the absence of a full and fair record "dooms [his] Sixth Amendment challenges." (Def.'s Reply Br. at 10.) This is insufficient to establish materiality under Rule 16, and his requests for production are accordingly denied in their entirety.

Even if these issues were somehow cured, Defendant would still face other impossible hurdles. First, to be reasonable, a request for documents must be framed in sufficiently specific terms to show the government what it must produce. *See Caputo*, 373 F. Supp. 2d at 793; *United States v. Williams*, 792 F. Supp. 1120, 1131 (S.D. Ind. 1992); *United States v. Lov-It Creamery, Inc.*, 704 F. Supp. 1532, 1553 (E.D. Wis. 1989). Many of Defendant's requests fall short of this standard (e.g., Request 1: "Anything that reflects or relates . . . to Mr. Paul's relationship to the relevant governmental investigations"; or Request 7: "All documents evidencing, reflecting, or relating to any discussions, negotiations, correspondences, thoughts, or notes regarding the

relationship between Mr. Paul and the Prosecuting Parties." (Def.'s First Req. Doc. [Dkt # 234] at 3-4)). Such wording reflects a total lack of any serious attempt to craft reasonable requests tailored to the actual outstanding issues. On the contrary, to fulfill such requests the government prosecutors would be required to make their own value judgments (guess) as to what documents may, for example, "evidence, reflect, or relate to" whatever constitutes the "relationship between" the defendant and the government. The requests are unreasonably broad.

Second, many, if not most, of Defendant's requests fly in the face of the deliberative process privilege, which "covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position." *See United States v Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004). Of course, this privilege may be overcome where a defendant shows a particularized need for the information, *id.*, but given that defendant has failed even to establish materiality, it follows that no such particularized need exists. Further, even if materiality were to be established, there appears to be no need to breach the privilege. *See Guzman v. City of Chi.*, No. 09 C 7570, 2011 U.S. Dist. LEXIS 1730, at *14 (N.D. Ill. Jan. 7, 2011) (declining to circumvent the deliberative process privilege where the requested evidence was available through other, nonprivileged means). Here, the only information on point to the remaining issues in this case concerns what the government promised Defendant and/or attorney regarding deferred prosecution and what Defendant's attorney said to him in that regard. It would appear, by definition, that all such evidence is already available to the Defendant. His discovery requests, however, go far, far beyond that to include wholesale requests for intra-agency communications protected by the deliberative process privilege.

And third, with respect to the only valid request (Request 10, which asks for documents regarding Defendant's restitution), the government asserts that it has adequately responded to it, and the Court accepts the government's representation in this regard.

## **CONCLUSION**

The Court sustains the government's objections to Defendant's First Requests for Production of Documents. To the extent that Defendant moves to reconsider the Court's October 13, 2015 order, that motion is denied.

**SO ORDERED.**                                    **ENTERED: January 7, 2016**

*Ronald A. Guzmán*

**HON. RONALD A. GUZMÁN**
**United States District Judge**